UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

GLORIA DYE,                                        )
        Plaintiff,                          )
                                                   )
    vs.                                    )                    3:09-cv-030-RLY-WGH
                                                   )
STATE OF INDIANA DEPARTMENT OF )
CORRECTION, WABASH VALLEY         )
CORRECTIONAL FACILITY,               )
        Defendants.                         )


**ENTRY ON DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Gloria Dye ("Plaintiff"), of Hispanic descent, worked as a Captain for the

Indiana Department of Correction at the Wabash Valley Correctional Facility

(collectively "WVCF") in Carlisle, Indiana, and retired from that position in February

2011.  On March 10, 2009, while still employed at the WVCF, Plaintiff filed a Complaint

against her employer alleging that: (1) she was the victim of gender, national origin, and

race discrimination, and that, after she complained of this discrimination, WVCF

retaliated against her, in violation of Title VII of the Civil Rights Act of 1964 and 42

U.S.C. § 1981 respectively; (2) she was the victim of age discrimination, in violation of

the Age Discrimination in Employment Act; and (3) the WVCF retaliated against Plaintiff

for taking leave under the Family Medical Leave Act ("FMLA") to care for her parents.

On July 12, 2011, the court granted WVCF's motion for summary judgment with respect

to all of Plaintiff's claims except her FMLA retaliation claim. WVCF now moves for

summary judgment on her FMLA retaliation claim. For the reasons set forth below,

WVCF's motion is **GRANTED**.

## I.     Factual Background

The facts of this case were addressed in the court's prior Entry on Defendant's

Motion for Summary Judgment, dated July 12, 2011. (*See* Docket # 78). Rather than

rehash those facts, the court will give a brief overview of the facts relevant to her FMLA

claim.

Plaintiff began her employment at WVCF on June 27, 1992, as a correctional

officer. (Deposition of Gloria Dye ("Plaintiff Dep.") at 6, 9). Plaintiff was promoted

through the ranks, and, in approximately 2000, she was promoted to the position of

Captain. (*Id*. at 10, 15, 24). As Captain, Plaintiff originally worked the night shift for

eight years (4:30 p.m. to 4:30 a.m.). (*Id*. at 36, 51). Plaintiff worked three days, and was

off for four days. (*Id*. at 36). Over her objection, she was transferred to the day shift in

August 2005, and then returned to the night shift in December 2008. (*Id*. at 51, 67;

Affidavit of Gloria Dye ("Plaintiff Aff.") ¶ 6). The Captain is the highest ranking official

to work the night shift, and only one works the night shift at WVCF. (*Id*. at 34-35). As

Captain, Plaintiff supervised the whole facility, all the staff, and responded to

emergencies. (*Id*. at 34).

Plaintiff reported to Major Dusty Russell ("Major Russell"), who worked the day

shift (7:30 a.m. to 3:30 p.m.). (*Id*. at 37-39). Plaintiff left before Major Russell came on

duty; therefore, she primarily communicated with him by email, written reports, and telephone calls. (*Id*. at 42). As noted in the court's previous Entry, there was friction between Major Russell and Plaintiff. Plaintiff testified that Major Russell "made it very clear" that he did not like her. (*Id*. at 62-63). When she worked the night shift, he left her "nasty notes, or nasty emails." (*Id*. at 54).

Plaintiff requested, and was granted, intermittent FMLA on two occasions to care for her parents: once in 2004 to care for her Mother, (*Id*. at 84-85; Plaintiff's Ex. 12), and once in April 2007, to care for her Father. (Plaintiff's Ex. 3). Plaintiff testified that prior to her first request for FMLA leave in 2004, she had never been disciplined. (Plaintiff Aff. ¶ 4). Plaintiff testified that after she took FMLA leave in 2004, Major Russell "watched [her] time," (Plaintiff Dep. at 65), and generally treated her unfairly by issuing her discipline and negative performance appraisals. The specific instances of unfair treatment are addressed below:

(1) On February 1, 2005, then-Captain Russell issued Plaintiff a Letter of Reprimand for failing to properly report the assault of a cook at the facility. (Plaintiff Dep. Ex. 24). Plaintiff admitted at her pre-deprivation hearing that she did not fill out the critical incident report, stating that she was unaware of the policy. (Plaintiff Dep. Ex. 26).

(2) In August 2005, Major Russell switched Plaintiff from the night shift to the day shift, and gave the night shift position to then-Lieutenant Eaton. (Plaintiff Aff. ¶ 6). Plaintiff believes that Major Russell, Lieutenant Eaton, and Lieutenant White wanted her removed from her night shift, and "tried to scare [her] out of being on nights," by taping a

racist note to her computer. (Plaintiff Dep. at 117-18; Plaintiff Dep. Ex. 7).

(3) On February 8, 2006, Plaintiff received a memorandum entitled Pattern of Abuse of Time from Major Russell for having too many absences for calendar year 2005 "on the Wednesday and Thursday before [the] weekend." (Plaintiff Dep. Ex. 8). Citing to Plaintiff's 2004 and 2005 Absentee Calendars, Plaintiff claims that most of her absences were approved leave under the Family Medical Leave Act to care for her dying Mother. (*See* Plaintiff Exs. 11, 12).

(4) In January 2007, Major Russell issued a 90-day Work Improvement Plan for Plaintiff. (Plaintiff Dep. Ex. 30). The Work Improvement Plan noted that Plaintiff did not provide effective supervision of Correctional Staff and failed to properly review and distribute reports, and keep shift logs up to date. (*Id*.).

(5) In April 2007, Major Russell issued Plaintiff a work performance appraisal for April 1, 2006 to March 31, 2007, giving Plaintiff an overall rating of "does not meet expectations," referencing the Work Improvement Plan. (Plaintiff Ex. 5). Plaintiff refused to sign the document. (*Id*.).

(6) On August 22, 2007, Major Russell issued Plaintiff a Letter of Written Reprimand for calling in 11.5 hours of sick leave, when she only had 11 hours of accumulated sick and vacation time to take. (Plaintiff Dep. Ex. 14). The reprimand, along with a prior failure to report a "critical incident" in October 2007, negatively affected her written performance appraisal, completed by Major Russell on December 20, 2007. (Plaintiff Ex. 8). She again received a "does not meet expectations" overall rating.

(*Id.*).

(7) On January 11, 2008, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and received a notice of right to sue on December 12, 2008. (Plaintiff Dep. Ex. 28). Plaintiff's EEOC charge does not claim FMLA retaliation, although she does mention that in 2007, Major Russell "made a point of either telling me or giving me a look of disagreement for taking a day under FMLA." (*Id.* at 6).

(8) At some point (the record is not clear), Captain Timothy Riggle ("Captain Riggle"), her new supervisor, told Plaintiff that Sergeant Wilson should train the new employees. (Plaintiff Dep. at 92). Plaintiff did not agree with that decision, but eventually heeded Captain Riggle's request. (*Id.* at 92-93). Plaintiff testified that when she told Sergeant Wilson to train the new employees, she "went off on me, screaming and yelling at me." (*Id.* at 93). Plaintiff testified that Major Russell called Sergeant Wilson, and [t]he next thing [she] kn[ew], [she was] facing an affirmative action thing." (*Id.* at 94). The "affirmative action thing" refers to the March 19, 2008, request for a pre-deprivation meeting from Captain Riggle to Assistant Superintendent of Operations Brian Smith ("Assistant Superintendent Smith") regarding an incident on March 16, 2008, in which it was determined that she did not follow proper procedure regarding an inmate who attempted suicide. (Plaintiff Dep. Ex. 10; *see also* Plaintiff Dep. Exs. 9, 18). Rather than issue a three-day suspension as originally planned, Assistant Superintendent Smith issued Plaintiff a written reprimand. (Plaintiff Dep. Ex. 11).

## II.  Summary Judgment Standard

Summary judgment is proper only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the burden of informing the court of the basis for its motion and demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett.*, 477 U.S. 317, 323, 325 (1986).  To withstand a motion for summary judgment, the nonmoving party may not simply rest on the pleadings, but rather must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial. . .". *Id*. at 322.  If the non-moving party fails to make this showing, then the moving party is entitled to judgment as a matter of law.  *Id*. at 323.

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *See Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 264 (7th Cir. 1996).  No genuine issue exists if the record viewed as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001).

## III.  Discussion

The FMLA forbids an employer from retaliating against an employee who exercises FMLA rights.  29 U.S.C. § 2615(a)(2) (stating that an employer may not

"discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]"). A claim for FMLA retaliation is analyzed in the same manner as one brought under Title VII; that is, a plaintiff may prove her claim by the direct or indirect method of proof. *Lewis v. School Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). Plaintiff proceeds under both methods of proof.

## A.    The Direct Method

Under the direct method, the plaintiff may show, either through direct or circumstantial evidence, that the employer's decision to take the adverse job action against her was motivated by an impermissible purpose, such as the exercise of FMLA. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998)). To do so, Plaintiff must prove that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Although Major Russell's issuance of the February 2006 Pattern of Abuse of Time could possibly be considered an adverse employment action, (*see* discussion of Plaintiff's indirect case on pages 10-11 of this opinion), for the reasons set forth below, Plaintiff does not offer evidence that the memorandum was causally linked to her use of FMLA leave.

Plaintiff's sole argument in support of her direct case is that: (1) she took FMLA in 2004-2005 to care for her Mother; (2) Major Russell knew she had taken FMLA; (3) she was disciplined by Major Russell for that time; and (4) Major Russell expressed

7

frustration by Plaintiff's use of FMLA. (*See* Plaintiff's Response at 16 (citing only to her

facts numbered 15, 22-26)). Plaintiff misrepresents the circumstances underpinning

Major Russell's issuance of the Pattern of Abuse of Time Memorandum. Major Russell

testified that Human Resources was instructed by the Superintendent and the Assistant

Superintendent to look for absence-related patterns pertaining to all of the WVCF staff

for the 2005 calendar year, that Plaintiff's pattern of absences fell into one of those

categories, and that he was directed to send Plaintiff the memorandum per the instructions

of the Superintendent and Assistant Superintendent. (Russell Dep. at 92-93). Major

Russell's testimony establishes that he could not have counted Plaintiff's FMLA time

against her in calendar year 2005, because he was not in charge of that calculation – that

job belonged to the Human Resources Department. Moreover, there is no evidence in the

record that she took FMLA leave in 2005.[1] Although Plaintiff's 2004 Absentee Calendar

contains notations (i.e., "FML") reflecting that she took six days off pursuant to her

request for FMLA, Plaintiff's 2005 Absentee Calendar contains no such notations.

(*Compare* Plaintiff Ex. 11 *with* Plaintiff's Ex. 12). In addition, Plaintiff testified that she

requested FMLA leave in 2004; she says nothing about calendar year 2005. (*See* Plaintiff

Aff. ¶ 4; *see also* Plaintiff Dep. at 84-85 (testifying that she took FMLA, but not

---

[1] The record is remarkably bereft of specific facts relating to her use of FMLA. Although Plaintiff presented a document relating to her use of FMLA in 2007, (*see* Plaintiff Ex. 3), the record fails to contain an Absentee Calendar for 2007, or any other evidence reflecting her absence from work due to FMLA leave during that calendar year. Curiously, the record does contain an Absentee Calendar for 2006 with "FML" notations. (*See* Plaintiff's Ex. 9).

specifying any dates)). Thus, even if Major Russell was in charge of keeping track of

Plaintiff's FMLA-related absences, he could not have counted FMLA leave against her in

2005 by issuing that memorandum, because she did not exercise her right to FMLA leave

during that calendar year.

Plaintiff's contention that Major Russell was "frustrated" with her use of FMLA

time is likewise not supported the record. Her only support for that fact is her citation to

Lieutenant Michael Voightchild's testimony. He testified only that, in his opinion,

Major Russell "may have been frustrated at times, but [he] personally didn't know of any

time where [Plaintiff] got in trouble for being gone with her family." (Deposition of

Michael Voightschild at 11). Plaintiff's evidence is insufficient to establish that Major

Russell issued the Pattern of Abuse of Time Memorandum with an intent to retaliate

against Plaintiff for her use of FMLA leave. The court now turns to Plaintiff's indirect

case.

### B. The Indirect Method

The indirect method requires Plaintiff to show that: (1) she engaged in statutorily

protected activity; (2) she was performing her job to her employer's legitimate

expectations; (3) she suffered an adverse employment action; and (4) she was treated less

favorably than similarly situated employees who did not engage in statutorily protected

activity. *Tomanovich*, 457 F.3d at 663. Once a prima facie case is set forth, the burden-

shifting pretext analysis takes place. *Id.*

For retaliation claims, an adverse action need not affect the terms and conditions of

employment.  *Palermo v. Clinton*, 437 Fed.Appx. 508, 510-11 (7th Cir. 2011).  Instead, "an adverse employment action is one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity."  *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011) (internal quotation marks and citation omitted).  Here, Plaintiff argues that Major Russell "took adverse employment actions against her in the form of harassment, lowered evaluations, unwarranted discipline including a work improvement plan, and changing her shift [from nights to days]."  (Plaintiff's Response at 16).  Plaintiff's negative performance evaluations and work improvement plan could be considered adverse employment actions.  *See id.* at 741 (finding that a negative performance evaluation "could constitute an adverse action within the meaning of proving the direct method of proving retaliation"); *but see Palermo*, 437 Fed.Appx. at 511 (finding that plaintiff's performance evaluation was not an adverse action because it contained constructive criticism and was otherwise favorable).  However, changing Plaintiff's shift from nights to days and disciplining her for failing to follow policy – which she admits – are not.  *Palermo*, 437 Fed.Appx. at 511 (noting that "an employee who complains of discrimination is not immune from the normal slights and disappointments that most employees experience").

Ultimately, Plaintiff's claim fails on the fourth element of her prima facie case – i.e., that similarly situated individuals were treated more favorably than she.  Employees are similarly situated if they are "directly comparable to her in all material respects."

10

*Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). "This normally

entails a showing that the two employees dealt with the same supervisor, were subject to

the same standards, and had engaged in similar conduct without such differentiating or

mitigating circumstances as would distinguish their conduct or the employer's treatment

of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Plaintiff argues that "she was the only Hispanic female Captain and that she was

treated differently than all other Captains." (Plaintiff's Response at 18). Plaintiff's broad

generalization that she is treated differently than all other Captains is insufficient to raise

an inference of discrimination. To discharge her burden, Plaintiff is required to come

forward with specific evidence, such as the name of at least one other Captain, the name

of that Captain's supervisor, and a specific circumstance – comparable to hers – in which

she was treated less favorably than that other Captain who did not take FMLA leave. *See*

*Walker v. Mitsubishi Motor Mfg. of Am., Inc.*, 113 Fed.Appx. 711, 713 (7th Cir. 2004)

(finding that plaintiff's general allegations that other employees were similarly situated to

him did not discharge his burden to present evidence of that fact). Plaintiff also argues

that her subordinate, Sergeant Wilson, was treated better than she. (Plaintiff Dep. at 92-

94). Plaintiff's only evidence in support of this assertion is her testimony that, following

her argument with Sergeant Wilson over training the new hires, Sergeant Wilson and

Major Russell conspired to get Captain Riggle to issue the request for a pre-deprivation

meeting against her. Plaintiff's testimony is based on nothing but pure speculation. In

any event, Sergeant Wilson is not similarly situated to Plaintiff, because they do not hold

the same position. *See Radue*, 219 F.3d at 617-18. For these reasons, Plaintiff's indirect case fails as a matter of law.

**IV.     Conclusion**

Plaintiff fails to establish that she suffered an adverse employment action which was motivated, at least in part, to retaliate against her for exercising her right to take FMLA-approved leave, under either the direct or indirect method of proof. Accordingly, Defendants' Second Motion for Summary Judgment (Docket # 106) is **GRANTED**.

**SO ORDERED** this  20th  day of April 2012.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Laura Lee Bowker
INDIANA ATTORNEY GENERAL
laura.bowker@atg.in.gov

Darlene Carole Robinson
ROBINSON & ASSOCIATES
office@olearylaw.net

Kate E. Shelby
INDIANA ATTORNEY GENERAL
kate.shelby@atg.in.gov